Last case, Freixa v. Prestige Cruise Hold on, Mr. Smith. No, you're fine. Certainly. Have a good day. Mr. Smith. May it please the Court, I am Sam Smith. I represent the appellant, Sean Freixa. Mr. Freixa sold cruise packages for Prestige for approximately a year. During that time period, he was paid $500 a week, plus commissions if he met a standard of at least selling four bookings in a month. Prestige has claimed that Mr. Freixa is exempt under Section 7i. Under Section 7i, Prestige has the burden of proof on this issue, and that's from Clindence. In Clindence, this Court held that the determination of the regular rate, which is at issue in this case, is done on a work week basis. It's determined by looking at all the compensation that is paid in that week and divided by the total hours. This employer has to show the hours worked in order to prevail on Section 7i at summary judgment. Mr. Freixa, the testimony below is that he worked between 60 to 65 hours sometimes. He worked as much as 70 hours or more in a week. The record is that he should be able to come before the District Court and make an argument at Mount Clemens about what his hours are. We think Clindence is directly on point. Can I ask you a question about something I just don't understand? I always figure when I've got people that are experts in the area, you can save me a lot of time. 7i refers to the hourly rate under Section 206 of this title, the federal minimum wage. That's correct, Your Honor. The District Court applied the Florida minimum wage. Was that? I think that was the error. I think that clearly under federal law, 7i incorporates 206. 206 is the federal requirement. We're not arguing that the state law minimum wage amount is the proper rate. I think it's clear that it's under. We have the Department of Labor here as well today. The big thing here, though, is that when the District Court invoked that regulatory exception, your argument is that the error was that if it's going to divide the commissions across work weeks, it has to do so on a monthly basis, right? Especially with this record. What happened in the court below, Frick's has served an When were the commissions earned and when were they paid? That's very clear from the record. They're earned on a monthly basis. They take into account all the issues that the company has raised on appeal. They take into account whether there were cancellations that happened. They're ascertained a month later and they're paid. When you have a scenario like that, what Frick's argued below is you've got to go back and you've got to apportion them to the weeks in that month. You've got to apportion the commissions. It says the period, right? The regulation says you have to allocate it among the work weeks of the period in proportion to the amount of commission actually earned or reasonably be presumed to be earned during each week. The period, your argument, is a monthly period. Yes. In this case, that's correct, Your Honor. That's the way the company's practice was I mean, they took into account cancellations. Every month they would pay the commissions. They wanted to make the commission period two months. They could have done that, but there's no dispute here that the commission period is a monthly period. Is that right? That's correct, Your Honor. If they would have had to hire people that would work on a two-month basis, they didn't do that. I don't think that's an issue. Could the apportionment of the commissions be pro rata over each of the weeks, or are you saying that they have to be researched and designated to the date that a contract was signed? We're saying that it's the company's burden to meet the standard. The proper way to do that would be to show when the commissions are earned. They answered that in an interrogatory and said it was a monthly basis. They didn't apply it to a particular work week. That would be the proper standard if they were able to be ascertained in a work week. But if they're not, what the 778-120 is doing is saying you can go back and you can average it over the work weeks in that period when the commissions are earned. That's what we think is proper at this stage of the case. There were two months where Mr. Fricksa didn't make any commissions whatsoever. Then he was only paid $500 a week. That averages out, even at 60 hours, to be below the 1.5 times minimum wage. At least during those two months... That's July 14 and November 14, right? That's correct, Your Honor. Let's take this hypothetical. In a given week, according to the way that they allocated commissions, they decided to pay X dollars for one week because of the number of closings that there were in commissions earned. Let's say that four months later, there's a cancellation that attaches to one of the weeks for which he was paid a commission. Do you then have to go back to that week and say, well, you shouldn't have gotten that because you didn't really earn that commission in that week? We were wrong because it got canceled. No, the regulations of the Department of Labor take that into account. They say, and this is in 778.121, which we did not cite in our brief, but I think it's important to look at. What 778.121 allows you to do is in later months, and this is exactly the way a prestigious pay plan worked, they're allowed to go back and take deductions from future commissions for those cancellations. At that point, that's a correction that they're allowed to make and the law allows for that. Okay, Mr. Smith, you've got three minutes that you've saved for rebuttal. We're going to hear from your friend. Thank you, Your Honor. Mr. Rumhill, glad you made it. Good morning. My name is Dean Rumhill on behalf of the Department of Labor, who is here as amicus on behalf of the plaintiffs' appellants. The district court erred by not requiring that Section 7i's requirement that an employee be paid one and one-half times the minimum wage, it erred by not looking at whether that requirement was met on a weekly basis. The fact that the requirement must be met on a weekly basis, it's our position that that's evident from the language of the statute, which says that no employer shall deem to have violated the overtime to pay . . . The district court could have invoked, though, this regulatory exception, possibly, about allocating the commissions, you know, over . . . across weeks, right? But the problem is that the way it did it, it strikes me, is that it's contrary to the text of the regulation because it contemplates that you would do so over the relevant period, which appears to be here, a monthly period. I would agree. I think that the district court looked at the first part of 778-120 and saw that in situations where it may be not possible or practical to allocate the commissions to the specific work weeks in proportion to the work weeks in which their commission are earned, that the regulations obviously allow for some flexibility. I think the error was that the district court did not follow through in reading the remainder of the regulation and identifying . . . It's not really an error, you would agree, to have invoked that regulatory exception. On this record, the real error was how it applied it, right? I'm not aware of any evidence in the record that would suggest that it was practical or impractical, so we are not contesting the invocation of that. What the district court, after determining . . . assuming that it did determine that it was impractical to allocate or to assign the commissions to the work weeks in proportion to which they were earned, the district court had before it two options and two methods that are identified in the rule. One would be to evenly allocate the commissions to the work weeks within the month, because I think the record is clear that the commission period here was a monthly . . . I think the record here is clear that the computation period for the commissions was a month, and so under 12778120, there were two options available. It could have allocated the commissions to the work weeks evenly within that month, or it could have allocated the commissions to the hours worked evenly in that month. So those were the two options available, and the district court instead chose an option to average it over the entire course of employment, and yes, that was the error. I think that the department's position on the fact that the minimum pay requirement must be analyzed on a weekly basis has been set forth in regulations. It's been set forth repeatedly in . . . The statute says it has to be based on a work week. I agree, and I agree that that's the case, and I think we have repeatedly stated that through regulations, through opinion letters. If I may address a point that was raised by the employer in its brief, there is a federal . . . sorry, an FOH provision that we both cite. They have suggested that there's language in there that the test need not be met in certain circumstances, and I would just like to explain the purpose of the FOH, which is to provide guidance to investigators as they are investigating cases. We put that FOH . . . we make it available to the public because it does contain certain guidance, and the point of that provision is simply that in situations where an investigator finds that the weekly standard is consistently and obviously met, that the investigator need . . . the test is satisfied. To doing the weekly math is not necessary in that particular case. There's nothing about that FOH provision which in any way suggests that the analysis must still not be done on a weekly basis. It just simply says that if it's obvious from the facts of the particular case that the weekly standard is met, the investigator should move on and focus on other aspects of the case. Here, that consistent, obvious standard is not clearly met as the FOH would require for the investigator to move on. In a situation where an employee is paid a $500 weekly salary and may not earn commissions in every month and works over 60 hours in a week, the simple math finds that the employee's regular rate falls short of the one and one-half times minimum wage that's required for the exemption to be satisfied. Could you explain to me, just because I found 7i somewhat confusing, the second part that says the compensation is for a representative period, not less than one month, does that mean that the employer can determine what period for which they're going to pay commissions? Yes. I mean, there are essentially three elements of the 7i exemption that need to be satisfied. One, it needs to be a retailer service establishment. The third is that the employee needs to be primarily paid by commissions, and that's the part of the exemption that you just identified. With respect to that particular requirement, which is not at issue here, the statute recognizes that employers may pay commissions for periods of time in excess of a week. The regulations, the full reason that we have a regulation that discusses allocation of deferred commissions for periods longer than a week is a recognition that many employers pay commissions on a period based on a month or longer. Thank you. Thank you, Mr. Romney. Mr. Neuberger. May it please the Court, Your Honors, my name is Mark Neuberger. I represent the appellee prestige group services with me at council table. This is my colleague, Larry Pearlman. What you just heard from the appellants would have you nullify a regulation in a Department of Labor handbook because the regulation under 7i is very clear. Quote, if it is not possible or practicable to allocate the commission among the work weeks of the period in proportion to the amount that the commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted. The following methods may be used. He suggested they must be used. This is not an exhaustive list. The field handbook... Some other reasonable and equitable method to allocate the commission among the work weeks of the period. Correct. The period here is a month. What we did, no, Your Honors, the case law and the multiple cases... Commissions are earned monthly, aren't they? They were paid monthly, but they weren't earned monthly because it's a moving target and I can explain in detail the record that was before the court that shows why it wasn't practicable or possible to calculate on a monthly basis and why the method we created was reasonable. What do you mean it wasn't practicable? You did explain. I guess in your answer, if you could include why your answers to interrogatory number six where you set out exactly the dates you were paid is consistent with it being too difficult to do. It was paid, but it wasn't firmly earned, if I may, Your Honors. In the record in this case, and there is a critical key document, and I think it helps distinguish our situation from many of the cases they cited. The key document appears at the Appellee Supplemental Index 42-8. It's a one-page document. I have copies if you would like to see them. This is a critically important document. This is the secret sauce to the commission structure. This is the one page. It is secret sauce. It was filed under seal. There's some critically key components about this, but first you have to understand how cruises are sold. Unlike other consumer sales, cruises are sold with a very long lead time, sometimes a year or more. Cruises are sold and then canceled. Not only are cruises sold, ancillary services like a stay at a hotel at the port of debarkation and a stay at the hotel at the end of the cruise, all of that was built into the commission structure. In addition, because of the long lead time, you have the potential for cancellations. Most importantly, this commission structure, unlike others, was progressive in nature. The percent of the dollars sold went up. It is a constant moving target. What the regulations are referring to about reasonability and practicability is one about allocating those earnings to a work week. When that's not reasonable or practicable, then you can allocate it to the commission over weeks or cross weeks, but it has to be during a period. The computation period that the statute and regs contemplate is the one you adopted, which is a monthly period. That's the period on which you pay these commissions. We pay, but we could take away in a month later. The more accurate analysis we believe, and it's supported by the Walton case in the Seventh Circuit. It's supported by three cases at the district court level within this circuit. It's supported by the case in... If you took away later, maybe the thing to argue to the district court is that commission amount for February should actually be $500 lower because it was taken away later in April. What the district court did here was allocated these commissions over the entire employment period. That seems to me completely wrong under the statute and regs. The field operations handbook to which he cited to says a week by week determination of the regular rate of pay for purposes of 7I1 is not necessary if the earnings are consistently and obviously higher than required to meet the test. In this case, the math clearly supports that. He would have had to work over 100 hours every week to fall below the one and a half times test if you allocate over the annual portion. The whole idea is 7I is different. A lot of the cases they cite to and some of the regulations the solicitor cited to deal with the typical FLSA situation. A non-exempt employee must be considered on a week by week basis. This is an exempt employee. The business rationale was embodied in the decision written by Jesse Easterbrook in Walton v. Consumers, the Seventh Circuit. The exact quote from that case is, it is unlikely that Congress meant employers to pay overtime in the lean weeks when the fat weeks more than make up. Other cases have used periods as long as one year to establish average wages and they cite to the AAA Auto Club case. Two cases in this case that we could find where the employer advocated that it was neither possible or practicable and they adopted a reasonable approach where the court didn't adhere to a longer period of averaging. It's what makes sense in the business context. These are commissioned sales people. They're unlike other workers. The whole theory is you don't punch a time clock. It takes a long time to sell a cruise. The economic benefit that inures to the employee fluctuates over time and the progressive nature of the commission structure that was embodied here to incentivize people to earn more money makes it fair and equitable under the circumstances. The Forster v. Smartstream case in the Middle District gave effect to the averaging by dividing over all hours as did Kuntzman v. Aaron Rents. That case was different reasons because there was a genuine issue. There were no genuine issues of fact before the trial judge. She made a factual finding because there were cross motions for summary judgment. So there's no dispute as to the number of hours here. In many of the cases they cite to, the cases were remanded. The question is whether there was an error of law. That's correct, Your Honor. We believe that a reading of the regulation and the case law that follows the Seventh Circuit adopted standard. It's the only circuit to my knowledge that has ruled on this issue specifically. And therefore we believe averaging over a longer period of time is totally appropriate. It's what makes sense in the business context and was consistent with the concept of a commissioned sales rep selling cruises over a long period of time. There are no further questions. Thank you, Mr. Newbarker. Mr. Smith. The interrogatory couldn't be any more clear in the answer. It says it's earned over a period of time. It's answered in number 16. There's nothing in the record to support the argument. I'd like to ask one follow-up question about earned on a monthly basis. So let's accept, which at least my practical experience is that if you get a cruise, you do in fact, that can morph over time as far as what additional things you might want, what things you might cancel. But if, for example, you sign up for the cruise and a month later you say, you know, we're going to stay for two more days and we're going to attach that on to our cruise reservation. Is the commission then paid in that next month? I'm not sure exactly how an add-on that came up later, in other words, not a cancellation but an increase in the commission, I would assume that that would be added in as well. But there's nothing in the record that I know of that addresses that specific question. But what is important to take into account is that cancellations, they don't affect months like what Frixa had where he had sold no booking, you know, he didn't sell enough bookings. Cancellations later are never going to change that. That month he didn't earn the one and a half times minimum wage. So that's very clear. You know, the record is devoid of the kind of evidence that you suggest, that there is information in the record that says cancellations happen over a long period of time. I don't think it's germane because the way that the company did it is they took into account the cancellations each month and the Department of Labor regulations would allow you to do that. You can't just not pay any overtime. You know, if you allowed this to stand, how would you even enforce this section of 7i? You would never be able to if you're an employee working for a company. You'd either have to quit and then at that point make a determination that you weren't paid properly. But you couldn't enforce it while you were working there. You could never raise it. I'm not saying what this indicates, but just to understand the way this works, if somebody worked for one month and the first three weeks of the month they didn't meet the overtime entitlement, but the last week they have a banner week and they make ten times more in commissions than they've ever made, would overtime be payable for the first three weeks but not the fourth? Well, that's what we argued below is that it was the company's requirement to meet the standard. They were supposed to establish how the commissions were earned and they didn't. I mean, basically... Isn't the answer to that question that if there was a banner week at the end of the month that it would be fair to allocate that commission among the work weeks of that month? That's something that the exception would allow for, but that's not what the district court did. That's correct, Your Honor. I mean, we've conceded that that could be done. We haven't challenged at this stage of the case the months in which Mr. Frick said made enough commissions to establish that he paid the time and a half. Mr. Smith, I have your time's up, but I have a question. Assuming we agree with your position, would it be appropriate for this court to do the calculation or to remand it to the district court because the work week still has to be established for what the hours are and that hasn't been done on summary judgment? I think that the employer conceded 60 hours for purposes of their summary judgment, but I think you just have to reverse with instructions. Thank you. Okay. Court, we are adjourned for the week. Thank you.